IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| DEBRA A. STAPLETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-CV-199-W-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Debra A. Stapleton seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her applications for Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had multiple severe impairments, including anxiety, bipolar disorder, and right knee degenerative joint disease, but retained the residual functional capacity ("RFC") to perform her past relevant work as a housekeeper.

Because the ALJ's opinion is supported by substantial evidence on the record as a whole, the Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

A complete summary of the record is presented in the parties' briefs and repeated here only to the extent necessary. Plaintiff filed the pending SSI application on April 4, 2011, and the pending SSDI application on April 6, 2011. In both, she alleged a disability onset date of October 1, 2007. After the Commissioner denied her application, Plaintiff requested an ALJ hearing. On December 18, 2012, the ALJ found that Plaintiff was not disabled. The Social

Security Administration Appeals Council denied Plaintiff's request for review on December 30, 2013, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Discussion

The Commissioner of Social Security follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that the ALJ erred: (1) at Step Two by failing to include Plaintiff's ankle fracture as a severe impairment; and (2) at Step Four by improperly weighing various pieces of evidence to formulate Plaintiff's RFC. These arguments are without merit.

**I. The ALJ did not err in classifying Plaintiff's ankle fracture as non-severe.**

The ALJ found that Plaintiff had severe impairments of bipolar disorder, anxiety, and degenerative joint disease in the right knee. R. at 13. He did not find Plaintiff's right ankle injury to be severe. *E.g.*, R. at 494–95. Plaintiff claims this was error.

An impairment is "non-severe" if it does not "significantly limit" a claimant's mental and physical ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (internal citation omitted).

In this case, substantial evidence supports the ALJ's finding that Plaintiff was not significantly limited by her right ankle fracture. Plaintiff was released to work the month after her July 2011 injury. R. at 495. During a September 2011 doctor's visit, she reported that she was back at her job as a housekeeper and that she was "doing well". R. at 493. Although her foot had some mild swelling, X-rays taken during that visit showed that the fracture looked to be completely healed. R. at 436, 493. Plaintiff does not appear to have sought any treatment for her ankle after November 2011. R. at 519 (November 2011 visit). By that time, Plaintiff had normal range of motion and no tenderness in her ankle. R. at 404. Nine months after her injury, Plaintiff was going to the gym and taking Zumba classes.[2] R. at 621. Most significantly, the

---

[2] Zumba is "a high-energy aerobic workout based on dance steps borrowed from merengue, salsa and other dances." Walecia Konrad, *Zumba Away, But Avoid Injury*, N.Y. Times, July 8, 2011, at B5.

record does not indicate how the healed ankle has "significantly limit[ed]" Plaintiff's ability to work.

Plaintiff argues that her medical records "show she had continued pain and sought additional treatment for almost a year" (Doc. 10, at 2), but every citation she provides is to visits that occurred between July and November 2011. In sum, substantial record evidence shows that Plaintiff's ankle fracture healed and had no more than a minimal impact on Plaintiff's ability to perform basic work activities. Therefore, the ALJ properly rejected the right ankle fracture as a severe impairment.

**II. The ALJ properly determined Plaintiff's RFC.**

Plaintiff next asserts that the ALJ committed a variety of substantive and procedural errors at Step Four in determining her RFC. First, she claims the ALJ did not properly analyze her credibility. Second, she challenges how the ALJ treated the opinions of treating nurse Mary Chance, A.P.R.N. ("Nurse Chance") and consultative examiner Barbara Markway, Ph.D. ("Dr. Markway").[3] Third, Plaintiff argues the ALJ did not prepare a narrative bridge between the record evidence and his RFC determination. Fourth, Plaintiff argues that the ALJ should have included physical limitations and more severe mental limitations in his RFC formulation.

**A. The ALJ articulated several well-supported reasons for not fully crediting Plaintiff's testimony regarding her mental limitations.**

Plaintiff first argues that the ALJ erred by rejecting her testimony as not credible. Plaintiff testified that she had problems working because of her high levels of stress, and that she was in a manic state about seventy-five percent of the time in which she had trouble being

---

[3] Plaintiff also challenges how the ALJ treated the opinions of her treating therapist Bridget Byrne, L.C.S.W. ("Ms. Byrne"). However, Plaintiff does not identify any opinion of Ms. Byrne from which the ALJ supposedly withheld due weight. In fact, the ALJ discussed Ms. Byrne's opinions and why they were less thoroughly supported than other medical evidence. R. at 17–18. Because Plaintiff fails to make a specific argument, the Court proceeds as if this issue had not been raised at all. *See Whited v. Colvin*, No. C 13-4309-MWB, 2014 WL 1571321, at *2 (N.D. Iowa Apr. 18, 2014) ("Whited's scant objections are akin to making no objection at all.").

around people at work. R. at 37, 46–47. She claimed that the other twenty-five percent of the time, she was in a depressed state where she had low energy and could not perform full-time work. R. at 47–49.

The ALJ must examine the claimant's credibility to properly formulate his RFC. *Ellis v. Barnhart*, 392 F.3d 988, 995–96 (8th Cir. 2005). The ALJ must base his credibility findings on the entire record including: medical records; statements by the plaintiff and third parties; the plaintiff's daily activities; the duration, frequency, and intensity of pain; the dosage, effectiveness, and side effects of medications; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). The ALJ must make express credibility determinations, but is not required to discuss each credibility factor. *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010). The court must defer to the ALJ's credibility findings "so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

Here, the ALJ cited the pertinent credibility factors and articulated at least five well-supported reasons for discounting Plaintiff's credibility. R. at 16–20 (citing 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186). First, Plaintiff's depression and stress were situational only, not permanent. Plaintiff's symptoms stemmed from her daughter's miscarriage and marriage, her father's health problems, and financial concerns. R. at 340–41, 343–45, 351, 355. These stressors are situational, strongly implying that they will improve over time. *See Dunahoo v. Apfel*, 241 F.3d 1039–40 (8th Cir. 2001) ("[T]he intake notes support the ALJ's determination that the depression was due to her denial of food stamps and workers

compensation and was situational. There is substantial evidence on the record that [the claimant's] depression did not result in significant functional limitations.").

Second, medications generally controlled Plaintiff's symptoms and she frequently reported doing well, good, or okay. R. at 317–20, 323–29, 337, 347, 349, 355, 357, 361, 363, 559, 565–66, 621; *see Schultz v. Astrue*, 479 F.2d 979, 983 (8th Cir. 2007) (endorsing the ALJ's decision to discount the claimant's subjective complaints where the underlying conditions were controlled by medications). Although Plaintiff emphasizes that her medications were occasionally ineffective at certain dosages, the record reveals that Plaintiff's treating physicians consistently monitored her medications and adjusted them as necessary. R. at 319, 320, 345.

Third, although Plaintiff claimed to always be in a state of mania, anxiety, or depression, she never required emergency room treatment or inpatient psychiatric treatment during the time period at issue. R. at 19; *see* SSR 96-7p, 1996 WL 374186, at *7 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ."); *cf. Edwards v. Barnhart,* 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment.").

Fourth, as the ALJ noted, Plaintiff's "earnings reflect a sparse work history that could suggest a lack of motivation to work." R. at 19, 148–57; *see Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("[A] lack of work history may indicate a lack of motivation to work rather than a lack of ability.").

Fifth, Plaintiff testified that she was able to work as a housekeeper, with the accommodation that she receives extra time to complete her work when necessary and help taking out the trash when the trash weighs over twenty-five pounds. R. at 39–40, 48. This

conflicts with her contemporaneous testimony that her alternating low energy and inability to be around people precluded full-time work. *See Rogers v. Astrue*, 479 F. App'x 22, 23 (8th Cir. 2012) (per curiam) (sustaining the ALJ's adverse credibility determination where the claimant made various inconsistent statements).

In sum, the Court defers to the ALJ's decision regarding Plaintiff's credibility because that determination is supported by "good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).[4]

### B. The ALJ did not err in discrediting Nurse Chance's opinions or in crediting Dr. Markway's opinions.

An RFC is the most an individual can still do despite her physical or mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ must determine a claimant's RFC based on all of the record evidence, including medical evidence. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). The ALJ should accord a treating physician's opinion controlling weight in this determination so long as it is well-supported by medically acceptable diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013). Nonetheless, an ALJ may discount or disregard a treating physician's opinion where it is inconsistent with other substantial evidence in the record, such as additional medical evidence or the claimant's testimony. *Myers*, 721 F.3d at 525.

The ALJ rejected the opinions of Nurse Chance: "The undersigned, then, has considered statements and assessments by Nurse Chance . . . and finds them inconsistent with the record."

---

[4] Plaintiff argues that the ALJ's credibility determination is infirm because it contains boilerplate language. Even assuming that this characterization is accurate, boilerplate language is not reversible error when accompanied by thorough discussion. *See Bernard v. Astrue*, 974 F. Supp. 2d 1247, 1260 (D. Minn. 2013). In other words, boilerplate language of the sort allegedly seen here is, at most, an "arguable deficiency in opinion-writing technique." *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987).

R. at 19. Plaintiff identifies three sets of opinions by Nurse Chance that she argues were not properly considered by the ALJ: (1) two one-page letters that stated simply that Plaintiff required "supported employment" and that Nurse Chance did not think Plaintiff would be able to hold down a fulltime job, R. at 311, 399; (2) a one-paragraph narrative response supporting a form mental residual functional capacity assessment, expressing the same sentiments, R. at 655; and (3) two checklist forms indicating Plaintiff had moderate or marked mental limitations, R. at 312–14, 653–55.

The ALJ did not err in discounting these statements for several reasons. First, these opinions do not appear to be based on objective medical evidence. *See Perks*, 687 F.3d at 1093–94. Second, they appear to rely solely on subjective complaints. *See Teague v. Astrue*, 638 F.3d 611, 615–16 (8th Cir. 2011). Third, they are conclusory. *See Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007). Fourth, her opinions were rendered without reference to—and inconsistent with—other salient record evidence, including Plaintiff's extensive daily activities and ability to work with coworkers with minimal difficulty. *See Wildman v. Astrue*, 596 F.3d 959, 967–68 (8th Cir. 2010). Fifth, and most significantly, the record contains other, contradictory medical assessment that were more thoroughly supported, including the opinions of Christopher Bagway, M.D., Dr. Markway, James P. Reardon, M.D. ("Dr. Reardon"), James Hamilton, M.D. ("Dr. Hamilton"), and Grant Piepergerdes, M.D. ("Dr. Piepergerdes"). *See Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014). Therefore, the ALJ was within his discretion to reject Nurse Chance's opinion.

Plaintiff argues that Nurse Chance's opinions are saved by a statement by Dr. Piepergerdes, "I reviewed the patient's chart and agree with [Nurse Chance's] treatment plan for her." R. at 354. However, Dr. Piepergerdes's statement referred to Nurse Chance's treatment

8

plan for Plaintiff's anxiety and difficulty sleeping, R. at 355, not to Nurse Chance's opinions on Plaintiff's inability to perform fulltime work and on Plaintiff's mental limitations in doing work-related activities on a sustained basis. Thus, Dr. Piepergerdes's statement does not support Nurse Chance's contested views.

Next, Plaintiff argues that "the ALJ failed to assign any weight to the consultative examiner, Dr. Markway." (Doc. 8, at 20). The ALJ stated, "There is no evidence to contradict the only medical opinion by the State agency medical consultant, Barbara Markway . . . ." R. at 19. He also formulated an RFC consistent with Dr. Markway's opinions, showing he considered that evidence and how it affected Plaintiff's ability to work. *Compare, e.g.*, R. at 15 (RFC), *with* R. at 393 (Dr. Markway's narrative notes). Although the ALJ did not discuss Dr. Markway's opinions in great detail, he was not required to do so. *See Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993). The ALJ sufficiently indicated what weight he gave Dr. Markway's opinions.

### C. Plaintiff's narrative bridge argument is frivolous.

Plaintiff argues that the ALJ's RFC is erroneous because "the ALJ did not provide a narrative bridge linking the RFC to the specific medical records" (Doc. 8, at 24). Because the ALJ is not required "to follow each RFC limitation with a list of specific evidence on which the ALJ relied," the Court rejects Plaintiff's argument. *Hilgart v. Colvin*, No. 6:12-0322-DGK, 2013 WL 2250877, at *4 (W.D. Mo. May 22, 2013). The ALJ's RFC formulation evinces careful consideration of all evidence related to Plaintiff's credible limitations, and the Court finds no error in its construction.

### D. The physical component to Plaintiff's RFC was rendered based on sufficient evidence.

Plaintiff argues that the ALJ erred in rendering an RFC without physical limitations related to her knee impairment. Plaintiff injured her knee in November 2011 and was diagnosed

with a sprain. R. at 409. To treat it, Dr. Reardon told her to wear a knee brace. R. at 490. Two months later, Dr. Hamilton told her she did not need to wear the knee brace anymore, and instead told her to do knee exercises. R. at 661. By April 2012, Plaintiff had returned to the gym and was exercising. R. at 622. She reported improvement in her knee pain three months after that. R. at 651. But more importantly, the record does not show that Plaintiff's knee has limited her ability to perform work. Although the record establishes that Plaintiff's knee caused her pain, "[a]sserted pain, in and of itself, is not necessarily disabling." *Easttam v. Sec'y of Health, Educ. & Welfare*, 364 F.2d 509, 513 (8th Cir. 1966). The ALJ thus did not err in formulating Plaintiff's RFC.[5]

Plaintiff argues that the ALJ "should have developed the record fully by sending [Plaintiff] to a physical consultative examination to determine the extent of her limitations and her functional abilities." (Doc. 8, at 22). Plaintiff confuses her burden at Step Four to demonstrate RFC with Defendant's duty to develop the record. *See Eichelberger v. Barnhart*, 390 F.3d 584, 591–92 (8th Cir. 2004). The ALJ's duty to develop the record is a narrow one. The claimant must establish the severity of a claimed impairment, and the ALJ "is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). Remand to more fully develop the record is generally required only when the record is patently deficient or inconsistent. *Pinkston v. Colvin*, No. 13-CV-539-DGK-SSA, 2014 WL 2960958, at *3 & n.4 (W.D. Mo. June 30, 2014) (collecting cases). Here, the record evidence sufficiently

---

[5] Plaintiff did testify at her hearing that she had trouble walking due to her knee popping and locking up. R. at 50. As discussed above, the ALJ properly discounted this testimony because Plaintiff was not credible. Even if the ALJ had found Plaintiff credible, substantial record evidence still permits a conclusion that the knee impairment does not impair Plaintiff's RFC.

demonstrated that, despite having a knee injury and seeing doctors several times for it, Plaintiff did not claim until her hearing that it restricted her ability to work. *See Halverson*, 600 F.3d at 933 (holding that ordering a consultative evaluation is not necessary where the medical evidence, claimant's statements, and other evidence provides substantial evidence supporting a determination that the claimant was not disabled). Thus, the ALJ did not err.

Plaintiff next challenges the nonexertional aspect of ALJ's RFC formulation, which stated that Plaintiff "is limited to simple unskilled work with no contact with the general public and only occasional contact with coworkers and supervisors. This work must not be at a fast pace or involve production standards." R. at 15. Plaintiff contends the record evidence suggests more severe limitations than those adopted by the ALJ. However, Plaintiff's treatment notes consistently show that Plaintiff was generally doing well with symptoms that were largely a result of situational stressors, and show that Plaintiff was pleasant, cooperative, and had no problems interacting with her therapist, nurse, and psychiatrist. *E.g.*, R. at 317–20, 323–29, 337, 340–41, 343–35, 347, 349, 351, 355, 357, 361, 363, 559, 565–66, 621. Plaintiff's work supervisor noted that Plaintiff's housekeeper job was "rather simple," but said that Plaintiff "does what is asked of her without special assistance or need[i]ng to be told what to do repeatedly." R. at 261. He added that Plaintiff emptied the trash and vacuumed, and "normally [made it] in to work on time with no problems." R. at 261. This substantial record evidence supports the ALJ's determination that she could perform the mental requirements of simple, unskilled work. The only evidence cited by Plaintiff to support a finding of more severe nonexertional limitations comes from Plaintiff herself, whom the ALJ did not find credible. *See Wildman*, 596 F.3d at 969 ("[The claimant] fails to recognize that the ALJ's determination

regarding her RFC was influenced by his determination that her allegations were not credible."). Accordingly, the ALJ did not err in determining the physical component of Plaintiff's RFC.

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  November 14, 2014     /s/ Greg Kays
                                                                         GREG KAYS, CHIEF JUDGE
                                                                         UNITED STATES DISTRICT COURT